406 So.2d 236 (1981)
Louise M. REED, Individually and as Administratrix of the Estate of her Minor Children, Barbara Reed and Karen Reed
v.
YOR-WIL, INC., et al.
No. 14322.
Court of Appeal of Louisiana, First Circuit.
October 12, 1981.
Rehearing Denied November 23, 1981.
*237 Sargent Pitcher, Jr., Rachel Pitcher Morgan, Michael C. Palmintier, Baton Rouge, for plaintiff-appellant Louise M. Reed, Indiv. and as Administratrix of the Estate of Her Minor Children Barbara Reed & Karen Reed.
Daniel R. Atkinson, Baton Rouge, for defendant-appellee Yor-Wil, Inc., William York and Maryland Casualty Co.
John S. White, Jr., Baton Rouge, for defendant-appellee Yor-Wil, Inc.
Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
This is a devolutive appeal by plaintiff-appellant, Louise M. Reed, individually and as administratrix of the estate of her minor children, Barbara Reed and Karen Reed, from a judgment maintaining the peremptory exception of defendants-appellees, Yor-Wil, Inc. and William York, and dismissing plaintiff's suit with prejudice at her costs. We affirm.
The incident giving rise to the present litigation occurred on June 13, 1979, when the employee, Ervin Reed, while working as a pipe layer, in the course and scope of his employment with defendant, Yor-Wil, Inc., at the job site located in Lafayette, Louisiana, *238 was killed when a trench in which he was digging collapsed. The plaintiff sued Yor-Wil, Inc. and William York, an alleged supervisory employee of Yor-Wil, and asserted "intentional acts," as well as negligent acts, of the defendants, the pertinent articles of the petition reading as follows:

"3.
"Plaintiffs allege on information and belief that the proximate cause of the injuries sustained by the decedent and plaintiffs was the intentional act and/or negligence of defendant, Yor-Wil, Inc., which intentional act or negligence is particularized in the following nonexclusive respects:
"(a) Failure to dig the aforementioned trench in the manner prescribed by industry regulations;
"(b) Failure to provide appropriate safety equipment against the advent of a collapse such as that which occurred;
"(c) Failure, generally, to exercise the degree of care commensurate with the factual situation herein described.

"4.
"Additionally and/or in the alternative, plaintiffs aver that supervisory personnel of defendant Yor-Wil, Inc., acted intentionally and/or negligently and breached duties owed plaintiffs' decedent to furnish him a safe place within which to work, in causing or permitting the aforementioned dangerous conditions to exist on the job site. More particularly plaintiffs aver that defendant William York, negligently and/or intentionally breached duties owed directly and personally to decedent, being duties which had been delegated to him by defendant, Yor-Wil, and assumed by him, which negligent and/or intentional breach was a proximate cause of the accident sued on, in that said defendant knew or should have known of the dangerous and unsafe conditions referred to above, but that he allowed the dangerous and unsafe situation to remain, and required decedent to work under such conditions, which acts and failures to act constituted intentional and/or negligent breaches of duties owed directly and personally to plaintiffs' decedent."
The matter came on to be heard on defendants peremptory exception of no cause of action, on the ground that plaintiff's exclusive remedy is in workmen's compensation. The exception was sustained after hearing, with well-considered written reasons by the trial court, which are annexed as Appendix I.
There is no merit to plaintiff's contention on appeal that the trial court erred in sustained defendants peremptory exception of no cause of action. LSA-R.S. 23:1032, as amended by Act 147 of 1976, provides, in pertinent part, that the rights and remedies granted to an employee or his dependent by the Louisiana Workmen's Compensation Act are exclusive of all other rights and remedies of such employee, his representatives, dependents, or relations against his employer or an employee of his employer, except for an "intentional act."
Plaintiff's petition affirmatively alleges that the employee was killed while working with Yor-Wil, and that York was in a supervisory capacity as an employee of Yor-Wil, with respect to the work being undertaken. The well-pleaded facts of the petition are accepted as true for adjudication of the exception of no cause of action, this exception being used to raise the question of whether the petition alleges a grievance for which the law affords a remedy to anyone. Bamber Contractors, Inc. v. Henderson Brothers, Inc., 345 So.2d 1212 (La. App. 1 Cir. 1977). The pleadings show that there is no well-pleaded factual allegation of an "intentional act" that caused the accident and death of Reed. There is no fact in the pleadings to indicate that either defendant entertained a desire to bring about the results obtained, or should have believed that the results were substantially certain *239 to follow anything they did, or did not do. The facts alleged cannot be construed as alleging an "intentional act."
In our opinion, Bazley v. Tortorich, 397 So.2d 475 (La.1981), by the Louisiana Supreme Court is dispositive of the instant case. Our Supreme Court found no constitutional impediments to LSA-R.S. 23:1032, as amended by Act 147 of 1976, reversing the contrary decision of the Court of Appeal, Fourth Circuit, in Bazley v. Tortorich, 380 So.2d 727 (La.App. 4 Cir. 1980). The Supreme Court interpreted the "intentional act" exception to the immunity provided by LSA-R.S. 23:1032 to mean that the defendant either desired to bring about the physical results of his act or believed that they were substantially certain to follow from what he did.
The issue raised by plaintiff's specification of error number one is whether or not the allegations of the petition in this case are sufficient to allege an "intentional act" exception to the immunity provided by the statute, as amended.
The allegations of the petition in the instant case fall far short of alleging material facts constituting an "intentional act" as defined by the Supreme Court in Bazley. See Nettles v. Bowlin, 386 So.2d 658 (La.App. 1 Cir. 1980). Paragraphs 3 and 4 of the petition characterize the defendants' conduct as alternatively "intentional" and "negligent". Although Louisiana adheres to a system of fact pleading, LSA-C.C.P. arts. 854, 891, mere conclusionary allegations are never sufficient to state a cause of action. In re Phoenix Building & Homestead Ass'n, 203 La. 565, 14 So.2d 447 (1943); Williams v. Chrysler Motor Company, 271 So.2d 551 (La.App. 1 Cir. 1972).
Hence, an allegation of "negligence" is merely the pleader's own conclusion of law. Naquin v. Baton Rouge Coca-Cola Bottling Co., 182 So.2d 691 (La.App. 1 Cir. 1965), writ refused, 248 La. 1100, 184 So.2d 24 (1966). Similarly, an allegation of "intentional act" is merely the pleader's own conclusion of law. See Bazley v. Tortorich, supra; Johnson v. Narcisse, 373 So.2d 207 (La.App. 4 Cir. 1979). In Bazley, the plaintiff alleged that the accident was caused by his co-employee's "intentional acts" in operating a garbage truck without a working horn, disregarding safe mechanical and electrical maintenance standards, failing to keep a proper lookout, failing to see what he should have seen, failing to stop in a safe place and failing to warn plaintiff of an oncoming danger. The Supreme Court disregarded the "intentional acts" allegation, stating "The pleadings do not express or imply that the co-employee garbage truck driver desired the consequences of his acts or omissions or that he believed the consequences were substantially certain to result from them."
Disregarding the "intentional act" conclusions of plaintiff's petition, the remainder of the petition alleges only that plaintiff's death resulted from defendant's failure to dig a trench as prescribed by industry regulations and failure to provide safety equipment against the advent of trench collapse, when defendants knew or should have known that such failures were dangerous and unsafe. These allegations do not satisfy the Bazley definition of "intentional act". The alleged physical result of defendants' conduct was the death of plaintiff's decedent. The petition does not allege either that defendants desired to bring about the death of the employee, or believed that Reed's death was substantially certain to follow from what defendants did. We hold that the petition fails to state a cause of action.
Plaintiff's "motion to amend judgment" after signing the judgment sought leave of the trial court to amend the petition to state a cause of action. Plaintiff asserts in specification of error number two that the trial court erred in denying plaintiff's motion, citing LSA-C.C.P. art. 934 and Tobin v. Jacobson, 369 So.2d 1161 (La.App. 1 Cir. 1979). This specification of error is also without merit.
*240 LSA-C.C.P. art. 934 directs that a judgment sustaining a peremptory exception shall permit amendment to the petition when the grounds of the objection may be removed by the amendment. The record of this appeal does not show that the plaintiff represented to the trial court that an amendment to the petition would remove the objection raised by defendants' peremptory exception of no cause of action. The plaintiff's "motion to amend" merely alleged that plaintiff "desires and is entitled to" leave to amend the petition to state a cause of action. The first time plaintiff has indicated the scope of the amendment sought to the petition is in her appellate brief. Obviously, the trial court could not consider what had not been presented to it. That court is not to be faulted for insisting upon plaintiff's compliance with LSA-C.C.P. art. 934, by requiring plaintiff to indicate that the proposed amendment to the petition would remove the objection pleaded by defendants' exception.
Nevertheless, the proposed amendment is inadequate to state a cause of action under the "intentional act" exception to the immunity provided by LSA-R.S. 23:1032, as interpreted by Bazley, supra. Plaintiff's proposed amendment to the petition alleges in pertinent part that defendants "knew or should have known to a virtual certainty that the consequences of their actions specified hereinbelow would be the injury of plaintiff's decedent." (Emphasis added.)
Insofar as plaintiff's proposed amendment alleges what defendants "should have known", it clearly fails to satisfy the Bazley "intentional act" definition (defendants' conscious desire or actual belief concerning the physical results of their acts).
Disregarding the "should have known" allegation, the proposed amendment to the petition merely alleges that defendants knew to a virtual certainty that the consequences of their actions would be the injury of plaintiff's decedent. As Bazley points out, "`act' refers to an external manifestation of will which must be voluntary, and `intent' is present when the offender either desires the consequences of his act or when he knew that the consequences were reasonably certain to result from his act." The defendants' "acts" are pleaded: "requiring plaintiff's decedent to participate in the digging of a trench, etc." However, plaintiff alleges no material facts concerning the pleaded conclusion that defendants "knew" to a virtual certainty that the consequences of their actions would be the injury or death to plaintiff's decedent. The allegation in the proposed amendment to the petition that defendants "knew" to a virtual certainty that the consequences of their actions would be injury or death to plaintiff's decedent is a mere conclusion of law, with no material facts to support it.
The Louisiana Supreme Court clearly rejected conclusionary allegations in Bazley, and required allegations of material facts to state a cause of action. Further, the Supreme Court stated in Bazley, "The principal legislative aim of the 1976 amendment [to LSA-R.S. 23:1032] was to broaden the class of defendants to be granted immunity from suits by injured employees in tort or delict." This legislative aim should not be frustrated by requiring those benefitting from it to defend actions in which the petitions do not allege material facts of liability under one of the statutory exceptions to such immunity.
Tobin v. Jacobson, supra, relied on by appellant, does not state the nature or scope of the amendment to the petition proposed by the plaintiff in that case. It is, therefore, no authority for remanding this case for amendment of the petition, where plaintiff's specifically proposed amendment is inadequate to remove the grounds of defendants' exception.
For the foregoing reasons, we affirm the judgment of the District Court at plaintiff-appellant's costs.
AFFIRMED.
*241 APPENDIX I
LOUISE M. REED, INDIVIDUALLY AND * NUMBER 235,507 DIVISION M
AS ADMINISTRATRIX OF THE ESTATE
OF HER MINOR CHILDREN, BARBARA * 19TH JUDICIAL DISTRICT COURT
REED AND KAREN REED
VERSUS * PARISH OF EAST BATON ROUGE
YOR-WIL, INC., and *
WILLIAM YORK * STATE OF LOUISIANA
WRITTEN REASONS FOR JUDGMENT

Pertinent Facts
Plaintiff is the surviving spouse of Ervin Reed who was killed when a trench in which he was working collapsed and partially buried him, eventually claiming his life. It is not disputed that Reed was in the course of his employment with defendant Yor-Wil, Inc. when the accident occurred. William York (Will Thomas York), the owner and president of Yor-Wil, Inc., was supervising the construction of the trench at the time of the accident and is joined as a defendant. Plaintiff alleges that the trench collapsed due to Mr. York's disregard for industry safety standards in his supervision of the construction. She argues that York's conduct should be classified as an "intentional act" as to which the workers' compensation act should not grant immunity to York or to Yor-Wil, Inc. The defendants interposed a peremptory exception of no cause of action, on the ground that plaintiff's exclusive remedy is in the compensation act. For the following reasons, the exception will be sustained.

Law and Reasons
La. R.S. 23:1032 provides in part:
"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. * * *"
The exclusive remedy available to the dependents or relations of an injured employee against an employer, or an officer or employee of an employer is in workers' compensation. The second paragraph of the article provides for certain exceptions.

"Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability civil or criminal, resulting from an intentional act."

If the injury to the employee is caused by an intentional act of the offender, then an additional tort remedy is available against the offender. Plaintiff contends that Mr. York acted with sufficient disregard of industry safety standards to constitute "an intentional act" under the statute. In particular, plaintiff alleges defendant York's:
"a) Failure to dig the aforementioned trench in the manner prescribed by industry regulations;
b) Failure to provide appropriate safety equipment against the advent of a collapse such as that which occurred;
c) Failure, generally, to exercise the degree of care commensurate with the factual situation herein described."
INTENTIONAL ACTS
Plaintiff relies in part on the decision by the Fourth Circuit Court of Appeal in the case of Bazley v. Tortorich, 380 So.2d 727 *242 (La.App. 4th Cir. 1980). In Bazley, the claimant was injured as a result of certain acts of a fellow employee, which, under ordinary tort law, would amount, at most, to gross negligence. The court found, however, that the acts of the co-employee were sufficient to bring him within the exception of La. R.S. 23:1032 and therefore to subject him to tort liability. The Court reasoned that an employer has no immunity from a tort suit if he entertained a desire to bring about the result which followed and he believed that the result was substantially certain to follow. However, the Court decided that a different standard should be applied when the offending party is one of the persons named in the statute other than the employer. It found that these non-employers' duty to employees is the same duty to exercise due care not to injure him as the duty owed to complete strangers. In effect, the Bazley Court interpreted the statute to exclude persons whom the legislature specifically included. By enunciating a duty of due care, that Court read "intentional" to mean "negligent" when applied to an executive officer, principal, director, stockholder, partner or co-employee, but to mean "intentional" when applied to an employer. The legislature included all of the above named parties under the same provision and there is no language in the statute which indicates that any such distinction was intended.
The Bazley decision stands alone. Numerous decisions both before and after the Bazley decision have interpreted the statute as it is written without the strained distinction which was made in that case. The First Circuit clearly stated what this court believes to be the correct interpretation of La. R.S. 23:1032 in the case of Guidry v. Aetna Cas. & Sur. Co., 359 So.2d 637 (La. App. 1st Cir. 1978). That Court determined that an "intentional" act under that provision is one in which "the defendant must have entertained a desire to bring about the result which followed and he should have believed that the result was substantially certain to follow." In Guidry, the claimant sought tort recovery from the employer of his minor son. Certain acts which can be termed as grossly negligent were alleged to have been "intentional" within the meaning of R.S. 23:1032 just as in Bazley. Aetna filed an exception of no cause of action based on the exclusive remedy provisions of that section and the exception was sustained and affirmed on appeal. While Guidry and Bazley are not in conflict as Guidry dealt only with an employer, later decisions have applied the Guidry standard to the other parties named in the statute. Johnson v. Narcisse, 373 So.2d 207 (La.App. 4th Cir. 1979) applied the Guidry standard in a suit against an executive officer as well as against an employer. The same is true of a decision in the Fourth Circuit just a few months prior to Bazley in Frazier v. Woodward, 378 So.2d 209 (La.App. 4th Cir. 1979). Tobin v. Jacobson, 369 So.2d 1161 (La.App. 1st Cir. 1979) and Perez v. Continental Casualty Co., 367 So.2d 1284 (La.App. 3rd Cir. 1979) are similar decisions. A very recent decision of the Third Circuit expressly followed Guidry in a suit against an employer and a co-employee, specifically rejecting Bazley. McGuire v. Honeycutt, 387 So.2d 674 (La.App. 3rd Cir. 1980).
Plaintiff, at hearing and in a supplemental memorandum, argues that the Bazley decision is not the entire basis of her case. Rather, she asserts that the Guidry definition of "intentional" results from an incorrect interpretation of prior jurisprudence and doctrine. The Guidry court, as already noted, declared that the defendant must have entertained a desire to bring about the result which followed and he should have believed that the result was substantially certain to follow, citing Monk v. Veillon, 312 So.2d 377 (La.App. 3rd Cir. 1975) and Prosser on Torts (West, 1971) pp. 31-32. Plaintiff argues that the conjunctive "and" was substituted for the disjunctive "or" and that one or the other is sufficient to constitute an "intentional" act. While the decision in Monk was only a brief treatment of Prosser, the result reached in that case was correct. The two-part test mistakenly created in that case was the result of only superficial treatment of the Prosser analysis. Looking beyond the Monk decision and *243 directly to Prosser reveals that the disjunctive "intended result or substantial certainty" test is the second part of a two-part inquiry.
Plaintiff's argument is without merit. For the reasons more fully explained in the opinion rendered this day in Banks v. Claibon, et al, (La.App.) 405 So.2d 1238 (copy attached), intent in the legal sense may be established by proof that the actor desired the consequences of his act (a subjective inquiry) or that he should have known to a virtual certainty that they would follow his act (an objective inquiry). The primary reason for the latter formulation is to alleviate the difficulty which a plaintiff would encounter in proving the state of mind of the actor. But in either event, as Dean Prosser makes clear in his hornbook, either desire of consequences or knowledge of them to substantial certainty must be established to prove that an act was "intentional" in the legal sense. Nothing in the allegations which plaintiff makes suggests that the defendant York should have known to a virtual certainty what the consequences of his conduct would be.
Respondeat Superior
Plaintiff specifically urges that defendant Yor-Wil, Inc., as employer of defendant York, should be vicariously liable for what plaintiff terms the "intentional act" of York which allegedly caused the death of the decedent. To a great extent, this argument is without merit because, as discussed earlier, York has not committed an "intentional act" in the meaning of the statute. But significant policy issues are presented by plaintiff's argument, which should be discussed.
The decision in Bazley, so heavily relied upon by plaintiff, purported to hold that, while the legislature might grant a broad immunity to employers from negligence actions, it could not do so with reference to co-employees. The Bazley opinion suggests that interpreting Act 147 of 1976 to grant immunity to co-employees for their negligent conduct would cause it to be unconstitutional, since the injured employee received no compensation remedy from those employees for surrendering his tort remedy. Even if this court thought that distinction to be valid (which it does not), the respondeat superior argument made by plaintiff in this case would violate even the Bazley approach to employer liability. Plaintiff seeks to take advantage of the limited immunity (or from another view, broadened liability) created by Bazley and to hold the employer liable through respondeat superior when he would otherwise be immune.
The first problem with this approach is that an employer is not ordinarily liable for the intentional torts of an employee. Plaintiff cites no authority to the contrary, and for the reasons discussed in the Banks opinion (attached), there appears to be no authority for the proposition in this context.
Even assuming that plaintiff were correct in the suggestion that Yor-Wil, Inc. might be liable under respondeat superior for an intentional act of York, a holding that plaintiff could proceed in tort against Yor-Wil would clearly violate the policy behind La. R.S. 23:1032 and its recent amendment.
It must be presumed that the legislature by its 1976 amendment meant to deny the "protection" of the compensation act to both co-employees and the employer under certain circumstances. It provided that there was no immunity for "liability ... resulting from an intentional act." That could be interpreted as describing injury inflicted personally by the employer through an intentional act on his part, or as describing liability of the employer (whether a legal or a natural person) for the intentional act of a co-employee of the injured employee.
In the former instance, it should be clear that no social policy would be served by permitting an employer personally to commit intentional torts on an employee and then "hide behind" the compensation act. But in the latter instance, immunity from tort liability would serve the general policy of the act and was no doubt intended. We require the employer to pay compensation to an employee even when the injuries he received were the result of the intentional *244 conduct of a co-employee. As to the injured employee, this is "personal injury by accident" which is compensable. The employer should, in keeping with the compensation principle underlying the act, be immune from a tort suit for the same injury, absent some showing of personal involvement of the employer in the intentional wrongdoing.
The reasons supporting this position are summarized in Malone & Johnson, Workers' Compensation Law and Practice, 14 Civil Law Treatise, § 365, pp. 165-166:
It should be apparent from this discussion that the reasoning which might support tort liability against the employer for his personal intentional conduct, or even against a co-employee individually for his personal intentional conduct, fails when it comes to the tort liability of an employer for conduct for which is he only vicariously liable. In such a case the intentional conduct, done without the knowledge or consent of the employer, is an "untoward happening or event" as to both him and the injured employee, and it should be regarded as an accident, and hence within the exclusive purview of the statute. Thus the prior jurisprudence in Louisiana limiting such an employee to a compensation remedy was correct and should be reaffirmed after the amendment.2
As to the tort liability of the employer who personally engages in intentional conduct which harms the employee, it could be held that the purpose of the amendment was not to give such a person a shield from liability, but rather to leave to the employee in such a case whatever ordinary remedy tort law would afford to him. Legislative clarification would be preferable, making it clear that any individual remains personally liable for his intentional act which causes harm to an employee, whether that individual be an employer or any co-employee. But, to the extent that tort law would require an employer to respond for the intentional conduct of his employees toward a third person, the same result should not obtain within the compensation system when that third person is himself an employee. As to such an employee and the employer, whatever injury he suffers is "personal injury by accident"3 as that term has been interpreted by longstanding Louisiana jurisprudence; and the reference in the 1976 amendment to injury "resulting from an intentional act" is not intended to change that interpretation.
Unconstitutionality
Plaintiff also argues that La. R.S. 23:1032 is unconstitutional if it denies her the right to proceed in tort against York personally as a co-employee, and presumably against Yor-Wil, Inc. as his employer. The argument is too narrow, fails to consider the broad purposes of the entire compensation act, and moreover has been rejected upon numerous occasions.
The very foundation of workers' compensation rests on the compromise between the employee and the business enterprise in which each surrenders certain advantages in order to gain others which are of more importance both to themselves and to society. The employer agrees to pay when it would not otherwise be liable and the employee forfeits his former right to a chance at full damages and receives certainty of payment of a more modest amount. W. Malone and A. Johnson, Louisiana Workers' Compensation, 2d Ed., pp. 38 et seq. In that same edition, the authors state that:
"Worker's compensation rests upon the sound principle that those persons who enjoy the product of a businesswhether it be in the form of goods or services should ultimately bear the cost of injuries or deaths that are incident to the manufacture, preparation and distribution of the product."

* * * * * *
"Under this approach the element of personal fault either disappears entirely or is subordinated to broader economic considerations."

Cited in note 3 at page 39 is the opinion of Drew, J., in the case of Kroncke v. Caddo Parish School Board, 183 So. 86, 91 (La.App. 2d Cir. 1938) in which it was stated that; *245 "... the underlying theory and intention of compensation statutes is to shift the burden of accidental injuries incident to employment from the injured employee onto the public through the employer." (emphasis added)
The legislature was entitled to construct a scheme to reflect this compromise, and to grant to the employee certain rights he never previously had (a money award without proof of fault on the part of the employer) in exchange for rights that he did have (upon proof of fault, tort damages against the employer or in some instances against a co-employee). It is true that prior to 1976, a tort suit against a co-employee was permitted, though it had never seriously been argued that an employer would have to respond indirectly through vicarious liability for such tort damages when he would not have to respond directly. After 1976, there is no more reason to entertain the argument that denial of a tort suit against a co-employee is unconstitutional, if the ultimate objective of such an argument is, again, indirect tort liability of the employer. The overall legislative scheme is the same, both prior to 1976 and after 1976, with reference to the tort and compensation liability of the employer.
The statute, as amended in 1976, has been consistently upheld against constitutional challenges. Branch v. Aetna Cas. & Sur. Co., 370 So.2d 1270 (La.App. 3d Cir. 1979); Flynn v. Devore, 373 So.2d 580 (La.App. 3d Cir. 1979); Tobin v. Jacobson, 369 So.2d 1161 (La.App. 1st Cir. 1979); Perez v. Continental Casualty Co., 367 So.2d 1284 (La. App. 3d Cir. 1979). The Bazley decision cited by plaintiff considered the statute to be valid only under the bifurcated standard it created. Without the distinction, the court stated that the extension of immunity to any one but the employer would be without a rational relationship to any valid state interest. It was found that there was a sufficient quid pro quo between an employer and the employee but that there was none between the employee and the other parties named in the statute. It was further stated that to extend this immunity to this class of persons other than the employer would create an arbitrary class of third persons who are immune from suit, the creation of which has no rational relationship to a legitimate state interest.
The constitutional standard stated by Bazley, the rational relationship standard, is the proper standardbut it was incorrectly applied. Unlike the situation in which there is a right involved which the U.S. Supreme Court has considered as fundamental, the scrutiny under the "rational relationship" approach is minimal. A constitutional attack because of alleged denial of equal protection can be successfully opposed by demonstrating that the legislative classification reasonably furthers a valid state interest or governmental purpose. Flynn v. Devore, supra; also see City of New Orleans v. Dukes 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).
All that need exist is a reasonable relationship to a valid state interest. Bazley concedes the grant of immunity as having a rational relationship to a valid state interest as it is afforded an employer. As indicated by the history of the immunity provisions and the jurisprudence cited herein, a clear state interest exists justifying the extension of immunity to the added classes. Because the basic purpose of the act was being undermined by suits against executive officers, the immunity was extended. The purpose was being undermined because, in reality the liability of these executive officers was eventually absorbed by the business enterprise.
The 1959 case of Adams v. Fidelity & Cas. Co., 107 So.2d 496 (La.App. 1st Cir.) rejected the long standing notion that the only duty an executive officer had would be to the corporation which was in turn answerable for the officer's acts. By so doing, the court opened the way for the subsequent flood of executive officer suits which were filed. Comment on the decision at the time predicted the undermining of the compensation principle:
"If officers in the upper echelons of management find themselves exposed to the often disastrous prospect of tort liability *246 for the almost unlimited number of employee accidents that could be in some way attributed to their neglect, they will be impelled in practice to exact liability insurance from the corporate employer. The result may be a denial to the employer of much of the practical advantage of the exclusive remedy provision." W. Malone, La. Workmens' Comp. Law & Practice, supp. sec. 366.
In extending the immunity the legislature recognized that the quid pro quo which Bazley spoke of between the employer and employee was unbalanced in favor of the employee and that the benefits which the employer was to get under the system were not, as a practical matter, being received. That the amendment, in equalizing the position between the employee and employer, conferred an additional benefit on the added classes is not a basis for declaring such benefits invalid in light of the important state interest served. The validity of the extension of immunity and the underlying state interests which support it were discussed in Perez v. Continental Casualty Co., 367 So.2d 1284 (La.App. 3d Cir. 1979) writs denied 369 So.2d 157. The Court found the 1976 amendments valid against equal protection and due process challenges:
"... the growing number of `executive officer' suits presented practical problems to the employer. By extending the employer's immunity from tort suit to the officers, directors, stockholders, partners or employees of such employer, the legislature granted immunity not only to an employer, but to those who form the basic indispensible ingredients of the employer's business. Such extension of immunity tends to maintain the integrity and original purpose of the act. Under these circumstances the legislative classification is found to be within reason and it achieves the objectives of the state. It is not a denial of equal protection of the law." 367 So.2d at 1288 (emphasis added)
This Court holds La. R.S. 23:1032 to be constitutional.

Conclusion
For the foregoing reasons, the court concludes that the peremptory exception of no cause of action must be sustained in favor of all defendants, and plaintiff's petition dismissed at her cost, because: (a) no defendant can be deemed to have committed an "intentional act" within the meaning of La. R.S. 23:1032, thereby losing the immunity from tort liability; (b) the immunity from tort liability granted an employer by La. R.S. 23:1032 is not lost when the responsibility of the employer is sought to be enforced by respondeat superior, absent any showing of personal involvement in an intentional tort by the employer; and (c) La. R.S. 23:1032 is not unconstitutional.
Baton Rouge, Louisiana this 17th day of November, 1980.
 /s/ Charles William Roberts
 JUDGE, 19TH JUDICIAL
 DISTRICT COURT